**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| OLGA KIMBERLY BUCKNER,<br>Plaintiff,<br>v.<br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | ) | No. CV 09-8814-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 3, 2009, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 19, 2010, and February 4, 2010. The parties filed a Joint Stipulation on August 3, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on December 10, 1964. [Administrative Record ("AR") at 37, 63.] She has an eleventh grade education [AR at 117, 380], and has past relevant work experience as a babysitter. [AR at 29, 114, 120-21.]

Plaintiff protectively filed her application for Supplemental Security Income payments on April 5, 2005, alleging that she has been unable to work since January 31, 2005, due to, among other things, mental illness. [See AR at 37, 63-65, 83, 113-18.] After plaintiff's application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 38, 40-46, 51-55.] A hearing was held on March 20, 2007, at which plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [See AR at 377-89.] On April 4, 2007, the ALJ found plaintiff not disabled. [See AR at 16-30.] When the Appeals Council denied plaintiff's request for review of the hearing decision on July 24, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 8-11.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A. THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to

perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since January 31, 2005, the alleged onset date of disability.[1] [AR at 22.] At step two, the ALJ concluded that plaintiff has the "severe" impairments of "depression and bipolar disorder by history." [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity[2] "to perform simple repetitive tasks with limited public contact at all exertional levels." [Id.] At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work. [AR at 29.] At step five, relying on Medical-Vocational Rule 204.00, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 29-30.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly: (1) evaluate her severe mental impairments; (2) evaluate her credibility; (3) determine her RFC; and (4) evaluate whether she

---

[1] The ALJ also determined that plaintiff had not performed her work as an in-home support services provider for her disabled daughter (performed after her alleged onset date) at a substantial gainful activity level. [AR at 22.]

[2] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

was able to perform other work. [Joint Stipulation ("JS") at 2.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A. THE ALJ'S RFC DETERMINATION**

Plaintiff contends that the ALJ erred in determining her RFC. [JS at 12-14.] Specifically, plaintiff asserts that the ALJ erred in excluding from his RFC determination his own finding that she is moderately limited in her ability to maintain concentration, persistence, or pace, as well as the opinions of the nonexamining state agency physicians and plaintiff's treating sources concerning her mental limitations. [Id.]

In determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); see Social Security Ruling[3] 96-8p, 1996 WL 374184, at *5, *7. "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

According to SSR 06-3p, an ALJ must also consider the opinions of medical sources who are not, according to the regulations, an "acceptable medical source"[4] -- i.e., social workers and therapists -- by weighing a set of factors, including "[h]ow consistent the opinion is with other evidence." See SSR 06-3p, 2006 WL 2329939, at *4-5 (listing factors that must be considered); see id. at * 3 ("[M]edical sources who are not 'acceptable medical sources,' such as ... licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). Although an ALJ may give an acceptable medical source's opinion more weight than opinions from other sources (see 20 C.F.R. §§ 404.1527, 416.927; Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996)), the ALJ may not completely disregard opinions from "other sources" -- such as social workers -- just because they are not "acceptable medical sources." See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (an ALJ is required to "consider observations by non-[acceptable] medical sources as to how an impairment affects a claimant's ability to work"). Rather, to properly reject a social worker's opinion, the ALJ must provide "reasons germane to each [social worker]

---

4 "Acceptable medical sources" include, among other professionals, licensed physicians and psychologists. 20 C.F.R. §§ 404.1513(a), 404.1527(d), 416.913(a), 416.927(d).

for doing so." Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).

**1. Plaintiff's Treating Sources' Opinions**

Plaintiff's treating records reflect that she received mental health treatment from the Palmdale Mental Health Center of the Los Angeles County Department of Mental Health from May 2005, to at least November 2006. [AR at 266-68, 288-314, 323-57.] On May 18, 2005, S. D. Lewis, a Palmdale Mental Health social worker, conducted an Adult Initial Assessment of plaintiff. [AR at 303-08.] The Assessment indicated that plaintiff reported a history of mental illness and treatment, that her symptoms impact her ability to work, and that she had not worked in eight years. [AR at 303.] S. D. Lewis evaluated plaintiff's mental status as including: restless motor activity; slowed speech; sensitive and guarded interaction; a tearful mood with lack of pleasure; a flat and sad affect; fragmented concentration; unimpaired intellectual functioning, memory, and associations; no apparent perceptual, thought, or behavioral disturbances; intact abstractions and judgments; adequate insight; average fund of knowledge; and no suicidal or homicidal ideation. [AR at 307.] S. D. Lewis diagnosed plaintiff with mood disorder, not otherwise specified, rule out major depressive disorder, with symptoms that include "persistent depression and manic episodes," low concentration and memory, sleep disruption, decreased energy, social isolation (with family and friends), mood swings, feelings of helplessness and hopelessness, and lack of interest in pleasure activities. [AR at 308.] S. D. Lewis assigned plaintiff of Global Assessment of Functioning score of 50,[5] and referred plaintiff to see, among other mental health professionals, Dr. R. Bandyan, a Palmdale Mental Health psychiatrist. [AR at 302, 308.]

Plaintiff's treating psychiatrist, Dr. Bandyan, completed an evaluation of plaintiff on June 2, 2005, noting that plaintiff was a "poor historian and inconsistent with her stories, symptoms

---

[5] A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000). A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). DSM-IV, at 34.

[and] feelings" and was "reluctant to converse." [AR at 296-97, 300.] Specifically, Dr. Bandyan stated that plaintiff had difficulty describing her depression, mania, and auditory hallucination symptoms; in describing her symptoms she would "ask[] questions about [her] illness and return[] [his] answers back to [him];" and she was "very suggestive." [Id.] Additionally, Dr. Bandyan observed that plaintiff demonstrated symptoms of anhedonia,[6] apathy, avolition,[7] and irritable mood; diagnosed her with adjustment disorder with depression and conduct impairment, rule out major depressive disorder and bipolar disorder; and assessed her with a GAF score of 45. [Id.] On June 14, 2005, Dr. Bandyan completed a Short-Form Evaluation For Mental Disorders in which Dr. Bandyan asserted that plaintiff's June 2, 2005, mental status examination revealed, among other things, plaintiff's restless motor activity, slow speech, cooperative and guarded behavior, slightly distracted concentration, average intelligence, labile affect[8] (noting that during her assessment plaintiff "was tearful and exhibited a lack of pleasure"), circumstantial thought process, and mildly impaired judgement. [AR at 266-68.]

On June 16, 2006, Stephanie Lee, a Palmdale Mental Health social worker, evaluated plaintiff's mental status as including, among other things, restless and agitated motor activity; exhibiting a mood without pleasure; feelings of hopelessness and worthlessness; and a sad and worried affect. She diagnosed plaintiff with bipolar disorder, and assigned her a GAF score of 40.[9] [AR at 334-40.]

---

[6] Anhedonia is defined as "total loss of feeling of pleasure in acts that normally give pleasure." Dorland's Illustrated Medical Dictionary, at 89 (29th ed. 2000).

[7] Avolition is defined as "the reduction, difficulty, or inability to initiate and persist in goal-directed behavior; it is often mistaken for apparent disinterest." See http://www.urbandictionary.com/define.php?term=avolition.

[8] Labile affect is "characterized by rapid changes in emotion unrelated to external events or stimuli." Dorland's Illustrated Medical Dictionary, at 36.

[9] A GAF score of 31-40 denotes "some impairment in reality testing or communication ... or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV, at 34. In addition to the mental health assessments described above, plaintiff's earlier treating sources assessed her as having a GAF score of 42 on April 11, 2003 [AR at 185], and a GAF score of 50 on November 15, 2003. [AR at 181.]

In the decision, the ALJ stated that he did not give weight to the GAF scores assessed by S. D. Lewis, Dr. Bandyan, and Ms. Lee because the ALJ found these scores inconsistent with plaintiff's mental status examinations and with plaintiff's daily activities of caring for her four dependant children (including a three-year-old child, twin 11-year-old boys, and a 21-year-old disabled daughter who received supplemental security income payments and for whom plaintiff was the representative payee and in-home support caretaker). [AR at 28.]

The Court finds inadequate the ALJ's reasons for rejecting the treating sources' assessments of plaintiff's GAF scores. First, the ALJ's rejection of the treating sources' findings as being inconsistent with or not sufficiently supported by the examination findings was improper because this reasoning fails to reach the level of specificity required for rejecting a treating source opinion. See Embrey, 849 F.2d at 421-23 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required ... The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted).

Further, the ALJ erred in discussing only those parts of S. D. Lewis', Dr. Bandyan's, and Ms. Lee's findings that supported his conclusion that plaintiff is not disabled by her mental impairments, to the exclusion of other parts of the treatment notes that contradicted the ALJ's conclusion and supported the low GAF scores assessed by the treating sources. Specifically, the ALJ concluded that S. D. Lewis' May 18, 2005, Initial Assessment showed that plaintiff's mental status was "essentially within normal limits." [AR at 24.] In so concluding, the ALJ discussed only some of S. D. Lewis' examination (including plaintiff's average fund of knowledge; unimpaired intellectual functioning, associations, and insight; lack of suicidal and homicidal ideation; lack of perceptual, thought, and behavioral disturbance; and intact judgment and insight), but apparently ignored those examination results that did not support the ALJ's conclusion (including plaintiff's presentation of restless motor activity; slowed speech; sensitive and guarded interaction; tearful

mood with lack of pleasure; flat and sad affect; and fragmented concentration).[10] [AR at 24.] Similarly, in discussing Dr. Bandyan's June 2, 2005, evaluation, the ALJ focused on Dr. Bandyan's notes indicating that plaintiff poorly and suggestively described her symptoms of depression and mania, but did not discuss Dr. Bandyan's findings that plaintiff also demonstrated symptoms of anhedonia, apathy, avolition, and irritable mood, or Dr. Bandyan's assertion in the June 14, 2005, form that plaintiff demonstrated cooperative behavior during her June 2, 2005, examination. [AR at 24-25.] Finally, in discussing Ms. Lee's June 16, 2006, assessment, the ALJ only noted the GAF score assessed by Ms. Lee, but did not discuss her findings that plaintiff's mental status showed restless and agitated motor activity; feelings of hopelessness and worthlessness; lack of pleasure; and sad and worried affect. [AR at 26.] An ALJ may not consider only those portions of the medical evidence that favor his ultimate conclusion. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2nd Cir. 1983) (the ALJ cannot selectively choose evidence in the record that supports his conclusions); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted). Similarly, the ALJ's failure to recognize that other mental health professionals assessed plaintiff as having a GAF score of 50 and below, i.e., assessments that undermine the ALJ's conclusion that S. D. Lewis', Dr. Bandyan's, and Ms. Lee's GAF assessments were inconsistent with the medical evidence, likewise constituted an improper selective consideration of the record.[11] See Gallant

---

[10] In the decision, the ALJ characterized some of plaintiff's other mental status exams as being "essentially within normal limits," and in doing so ignored information in plaintiff's treatment notes that contradicted the ALJ's characterization of these exams. See, e.g., AR at 26 (ALJ characterized the evaluations by Dr. Aquino on June 22, 2006 (treatment notes indicate plaintiff's depressed mood, mood swings, crying, disturbed sleep, and diagnosis of major depressive disorder [AR at 332-33]), and August 10, 2006 (treatment notes indicate plaintiff's depressed mood and diagnosis of major depressive disorder [AR at 330]) as being essentially within normal limits).

[11] The Court also observes that the ALJ's conclusion that "Dr. Bandyan questioned [plaintiff's] true symptoms as she asked him what the symptoms for the condition are and then state[d] she has all of them," is not wholly supported by the record. [AR at 29.] Although Dr. Bandyan stated (continued...)

v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).

In rejecting plaintiff's GAF scores as inconsistent with plaintiff's activities, the ALJ stated that he assumed plaintiff would be unable to care for her children and would not have been appointed her daughter's caretaker and payee if she was as disabled as indicated by those scores. [AR at 28.] The ALJ also cited to plaintiff's statement to a consultative examiner in December 2004 that she was "doing a good job caring for her children" and that she enjoyed walking, shopping, and going to the park, that she was able to do "some household chores, errands, shopping and cooking," and could go places alone, visit family and friends, and get along with others. [AR at 28; see also AR at 240-41.] The ALJ improperly rejected the treating sources' GAF scores on the basis of plaintiff's daily activities.

First, in concluding that plaintiff's ability to care for her children is inconsistent with the GAF scores discussed above, the ALJ improperly ignored numerous notations in the administrative record indicating that plaintiff has had serious problems caring for her children. Specifically, plaintiff's treatment notes are replete with notations that while under plaintiff's care, all of her children have been placed in foster or group homes and one of her sons was arrested and involved in the juvenile delinquency system [AR at 181, 192, 200, 235, 237], she has difficulty controlling and communicating with her children [AR at 190, 193, 194, 195, 198, 205, 206, 211, 221, 222, 224, 225, 234], her family stressors interfere with her psychological treatment [AR at 191, 197, 210, 212], and her psychological symptoms interfere with her ability to be a good parent. [AR at 292, 294.] Next, plaintiff's social security forms, treatment records, and testimony reveal

---

[11](...continued)
in his treatment notes that plaintiff vaguely and suggestively described her symptoms, he also characterized her behavior during the June 2, 2005, examination as "cooperative." [See AR at 266, 296-97, 300.] It is thus not clear that Dr. Bandyan doubted that plaintiff was being truthful in describing her condition, and "[t]he ALJ may not substitute his own layman's opinion for the findings and opinion of a physician." Gonzalez Perez v. Sec'y of Health and Human Servs., 812 F.2d 747, 749 (1st Cir. 1987). In analyzing the medical evidence on remand, the ALJ "must exercise a delicate discretion in determining whether [plaintiff's] complaints are faked or the product of ... psychological conditions beyond [her] control." Polny v. Bowen, 864 F.2d 661, 664 (9th Cir. 1988).

that although she is able to do some of the daily activities mentioned by the ALJ when she "feels high" (i.e., is in a manic rather than a depressed state), she has difficulty doing such activities (or even leaving her house or answering her telephone) when she is in a depressed state. [See AR at 90, 97, 289-90, 294, 301, 331, 333, 335, 343, 346, 351, 355, 382, 384-87.] Accordingly, a careful review of the record indicates that substantial evidence does not support the ALJ's conclusion that plaintiff's daily activities are inconsistent with the GAF scores discussed above, and that the ALJ's selective consideration of the record pertaining to plaintiff's daily activities was erroneous. Gallant, 753 F.2d at 1456; Day, 522 F.2d at 1156. Moreover, the ALJ did not cite to any evidence in the record to support his conclusory assumption that plaintiff would not have been appointed her daughter's caretaker and representative payee if she were herself disabled. For example, the ALJ cites no evidence concerning the criteria used by state agencies or the Social Security Administration when determining whether a person like plaintiff is suitable to serve as a caretaker or representative payee, or any evaluation made to determine if plaintiff is suitable. Thus, the Court cannot review this reason to determine if it is supported by substantial evidence. See Drouin, 966 F.2d at 1257; see also Harmon v. Apfel, 103 F.Supp.2d 869, 873 (D. S.C. 2000) ("A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court.") (quoting Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978)).

For the forgoing reasons, the Court cannot find that the ALJ supported his rejection of the GAF score assessed by Dr. Bandyan with specific and legitimate reasons, or that the ALJ provided reasons germane to S. D. Lewis or Ms. Lee for rejecting the GAF scores that they assessed. While the GAF scores cited above -- without more -- may not be determinative of the issue of disability, the Court is aware of no authority asserting that GAF scores and their implications -- especially scores from treating sources -- may be improperly rejected, as was done here. Plaintiff's scores indicate at least a moderate impairment, and possibly a major impairment, in social and occupational functioning. Even if not directly translatable into Social Security terminology, the scores may be probative of plaintiff's condition. See Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record) (citation omitted); see also

Escardille v. Barnhart, 2003 WL 21499999, at *5-6 (E.D. Pa. June 24, 2003) (remanding based in part on ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain employment."); Wickramasekera v. Astrue, 2010 WL 3883241, at *26 (D. Ariz. Sept. 29, 2010) (finding remand necessary for proper consideration of treating sources' GAF assessments, even though "a GAF score in the 45-50 range [does not] automatically result[] in a disability determination"). Accordingly, remand is necessary to consider and address this evidence.

**2. The Nonexamining Physicians' Opinions**

On December 15, 2004, nonexamining state agency physician Dr. R. Tarlyian completed a Mental Residual Functional Capacity Assessment ("MRFCA"), finding that plaintiff is moderately limited in her abilities to understand, remember, and carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in her work setting. [AR at 258-59.] Dr. Tarlyian opined that plaintiff can understand, remember, and carry out three-step commands with simple instructions. [AR at 260.] On July 7, 2005, nonexamining psychiatrist Dr. Luyen T. Luu also competed an MRFCA, finding that plaintiff is moderately limited in her abilities to understand, remember, and carry out detailed instructions; and maintain attention and concentration for extended periods. [AR at 317-19.] Dr. Luu opined that plaintiff has a sufficient ability to: understand and remember simple instructions, carry out short instructions, perform activities with directions and without additional support, maintain concentration in two-hour increments, maintain socially appropriate behavior, accept responsibility and respond appropriately to criticisms from supervisors, interact appropriately with the general public, and respond appropriately to changes in her work setting. [AR at 319.] In a handwritten note Dr. Luu also stated: "SRT c̄ lpc" (i.e., simple repetitive tasks with limited public contact). [See AR at 271, 319.] Dr. Archimedes Garcia affirmed Dr. Luu's MRFCA with a note stating he had reviewed the record evidence and the MRFCA. [AR at 319.]

In the decision, the ALJ asserted that he gave weight to Dr. Luu's assessment [AR at 28], but he did not say what weight, if any, he gave Dr. Tarlyian's findings. In determining that plaintiff has the RFC "to perform simple repetitive tasks with limited public contact" [AR at 22], it appears

that the ALJ credited the handwritten notation on Dr. Luu's MRFCA. However, because the ALJ did not include in the RFC any of the specific moderate functional limitations assessed by Dr. Tarlyian and Dr. Luu, it appears that the ALJ implicitly rejected these findings. He provided no reason for doing so. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that ... [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) (internal citation omitted). Further, the ALJ's failure to even mention Dr. Tarlyian's MRFCA findings concerning plaintiff's moderate mental limitations was error because SSR 96-6p specifically required the ALJ to explain in his decision the weight he afforded the opinions of the state agency consultants. See SSR 96-6p ("Findings ... made by State agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources," and ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

Because the ALJ failed to provide proper reasons for rejecting the GAF scores assessed by S. D. Lewis, Dr. Bandyan, and Ms. Lee, and provided no reasons for implicitly rejecting plaintiff's moderate mental limitations assessed by Dr. Tarlyian and Dr. Luu, the RFC, which did not include the limitations assessed by these sources, was defective. See Valentine, 574 F.3d at 690. Accordingly, remand is warranted for the ALJ to reconsider plaintiff's RFC once the medical evidence has been fully evaluated as set forth herein.[12]

/

/

/

/

---

[12] Because the Court finds remand warranted for the reasons expressed herein, the Court does not decide whether the ALJ also erred in not including his Psychiatric Review Technique Form findings concerning plaintiff's mental limitations in the RFC determination. [See AR at 28.]

**B. THE ALJ'S GRIDS ANALYSIS**

Plaintiff contends that the ALJ erred in relying on the grids[13] during step five of the sequential analysis and that the ALJ should have obtained testimony from a vocational expert to determine if plaintiff is able to work. [JS at 17-18.]

At step five of the sequential evaluation process, the burden shifts to the Commissioner to prove that, based on plaintiff's RFC, age, education, and past work experience, she can perform some type of substantial gainful activity that exists in significant numbers in the national economy. See Smolen, 80 F.3d at 1291; see also 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy."). The Commissioner (or ALJ) may meet this burden in one of two ways: (1) by obtaining testimony from a vocational expert, or (2) by referencing the grids. "Where a claimant suffers only exertional limitations, the ALJ must consult the grids. Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006) (internal citations omitted). However, when a claimant has both exertional and non-exertional limitations, "the grids are inapplicable [w]hen a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (internal quotations and citation omitted).

In the decision, the ALJ relied exclusively on the grids at step five of the sequential analysis (even though he stated that he used the grids as a "framework") to determine that plaintiff is not

---

[13] The Medical-Vocational Guidelines, also known as "the grids," are a table system for determining whether claimants' impairments are disabling. See 20 C.F.R., Pt. 404, Subpt. P, App. 2.

disabled.[14] [AR at 29-30.] The ALJ's grids analysis was flawed because, according to the ALJ's own decision, plaintiff is only limited by mental impairments, which are classified as non-exertional impairments under the Regulations. See Cooper, 880 F.2d at 1156, n. 7 ("Nonexertional limitations are non-strength related limitations. These include mental, sensory, postural, manipulative, and environmental limitations.") (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 579 (9th Cir. 1988) (Pregerson, J. concurring); 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)). Reliance on the grids is inappropriate where, as here, a claimant suffers from only non-exertional limitations. See Lounsburry, 468 F.3d at 1115; see also Polny, 864 F.2d at 663-64 (where a claimant is only limited by non-exertional impairments, "the grids do not apply, and the testimony of a vocational expert is required to identify specific jobs within the claimant's abilities"); Cooper, 880 F.2d at 1155 ("where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question") (internal footnote omitted). Moreover, it appears that plaintiff's mental limitations (even as characterized by the ALJ's inadequate RFC determination) are sufficiently severe to significantly limit her ability to do the range of work permitted by her lack of exertional limitations. See Hoopai, 499 F.3d at 1075; see also, e.g., Cox v. Astrue, 2010 WL 3120593, at *11 (W.D. Wash. July 9, 2010) (finding that an ALJ's RFC assessment that a plaintiff could perform only simple routine work with limited social contact meant that the grids did not completely and accurately represent the plaintiff's limitations). Accordingly, remand is warranted for the ALJ to reconsider at step five of the sequential analysis -- once plaintiff's medical record and RFC have been reconsidered as set forth above -- if plaintiff is able to perform other work by soliciting testimony from a vocational expert on this issue.

/

/

/

---

[14] Although the ALJ called a vocational expert to testify at the hearing, the vocational expert did not provide testimony relevant to the step-five analysis (i.e., whether plaintiff could perform other work despite her mental limitations). [See AR at 387-88.]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order for the ALJ to reconsider the medical findings, the RFC determination, and plaintiff's ability to perform other work at step five.[15]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 14, 2010

Paul L. Abrams

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[15] As the Court finds remand warranted for the reasons expressed herein, the Court exercises its discretion not to resolve plaintiff's remaining contentions of error.